# IN THE DISTRICT COURT OF THE UNITED STATES

## for the Western District of New York

---

**THE UNITED STATES OF AMERICA**

-vs-

**JOHN L. HUTCHINS**
(Counts 1 through 11) and
**ROBERTO SOLIMAN**
(Counts 1 through 10, and 12 through 19)

March 2021 GRAND JURY
(Impaneled March 26, 2021)

**INDICTMENT**

Violations:
Title 18, United States Code,
Sections 1349, 1343, 1344, 1001, and 1957
(19 Counts and 2 Forfeiture Allegations)

## INTRODUCTION

**The Grand Jury Charges That:**

At all times relevant to this Indictment:

### The Defendants

1.  Defendant John L. Hutchins ("Hutchins") was a resident of Lewiston, New York.

2.  Defendant Roberto Soliman ("Soliman") was a citizen of Egypt, a Lawful Permanent Resident of the United States, and a resident of Niagara Falls, New York.

3. Hutchins was the owner of the following companies:

- Rapids Theater Niagara Falls, USA, Inc. ("Rapids Theater"), a concert and events venue located in Niagara Falls, NY.

- 1711 Main, LLC ("1711 Main"), a limited liability company that owned the property in which Rapids Theater was located.

- Bear Creek Entertainment, LLC ("Bear Creek"), a limited liability company that operated events at The Woods at Bear Creek, a family camping resort.

- Hutch Enterprises, LLC ("Hutch Enterprises"), a limited liability company that operated as a property management company.

- The Hutchins Agency, LLC ("The Hutchins Agency"), a limited liability company that operated as an insurance sales agency.

4. Beginning in or around 2018, Hutchins employed Soliman as the chief financial officer of the companies Hutchins owned.

5. Soliman was the owner of one company, CWE Entertainment, Corp. ("CWE"), which was incorporated in New York in or about September 2019.

**Bank on Buffalo**

6. Bank on Buffalo was a division of CNB Bank, which was a financial institution based in Clearfield, Pennsylvania, the deposits of which were insured by the Federal Deposit Insurance Corporation.

7. Bank on Buffalo was authorized by the Small Business Administration to participate as a Paycheck Protection Program lender to small businesses.

**The Small Business Administration**

8.     The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to small businesses.

**The CARES Act**

9.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law, enacted on or about March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

10.    One source of relief provided by the CARES Act was funding to the SBA for the Economic Injury Disaster Loan ("EIDL") Program.  The EIDL program was designed to provide economic relief to businesses experiencing a temporary loss of revenue due to COVID-19.

11.    The EIDL program provided low interest loans to pay business expenses that could have been met had the pandemic not occurred.  Eligible expenses included payroll, sick leave for employees, increased production costs due to supply chain disruptions, and business obligations such as debts, rent, and mortgage payments.

12.    To obtain an EIDL loan, a business was required to submit a loan application, which was electronically certified by an authorized representative of the business as accurate under the penalty of perjury. The EIDL application required the business to state, among

other things, (i) the name of the business owner; and (ii) the gross revenues and cost of goods sold of the business for the twelve months prior to the disaster. The gross revenues and cost of goods sold for the twelve months prior to the disaster were used to calculate the amount of money a small business was eligible to receive under the EIDL program.

13. The CARES Act also authorized funding to participating banks so that they could provide forgivable loans to small businesses through a program referred to as the Paycheck Protection Program ("PPP").

14. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application. The loan application required that it be signed by an authorized representative of the business. The loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. An authorized representative of the business applying for the loan was required to certify that the information contained in the PPP loan application was true and acknowledge that providing false information in the application was punishable under federal law.

15. PPP loan applications were processed by a participating lender. The loan application and any supporting documentation was transmitted to the lender. If a PPP loan

application was approved, the participating lender funded the PPP loan using its own monies, which were 100 percent guaranteed by the SBA.

16. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan were eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan for payroll expenses.

17. Loans under the EIDL program were processed and approved directly by the SBA. The PPP loans were processed by a participating lender.

## COUNT 1

**(Conspiracy to Commit Wire Fraud and Bank Fraud)**

**The Grand Jury Further Charges That:**

18. The allegations of the Introduction of this Indictment are re-alleged and incorporated herein.

19. Beginning in or around March 2020, and continuing through in or around August 2020, in the Western District of New York, and elsewhere, the defendants, JOHN L. HUTCHINS and ROBERTO SOLIMAN, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown to the Grand Jury, to:

    a. devise and intend to devise a scheme and artifice to defraud financial institutions, financial service companies, and the SBA and to obtain money and

5

        property from financial institutions, financial service companies, and the SBA by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did transmit, and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343; and

    b.    execute a scheme and artifice to defraud financial institutions and to obtain money, funds, credits, assets, securities, and other property owned by, and under the custody and control of, financial institutions by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

20.    It was the object of the conspiracy and the scheme for the defendants to unjustly enrich themselves and their businesses by fraudulently obtaining loans from the SBA under the EIDL program and fraudulently obtaining PPP loans from financial institutions, by means of materially false and fraudulent pretenses, representations, and promises.

21.    Beginning in or around March 2020, and continuing through in or around August 2020, in furtherance of both the conspiracy and the scheme, the defendants transmitted and caused to be transmitted by wire communication eight fraudulent EIDL applications to the SBA through the SBA's internet website as set forth in the chart below:

| DATE | APPLICANT | LOAN AMOUNT |
|---|---|---|
| March 30, 2020 | CWE Entertainment d/b/a Rapids Theater | funded May 19, 2020 in the amount of $149,900 |
| May 13, 2020 | Bear Creek Entertainment | not funded |
| May 30, 2020 | Bear Creek LLC | funded June 18, 2020 in the amount of $149,900 |
| June 16, 2020 | 1711 Main LLC | funded June 23, 2020 in the amount of $149,900 |

| DATE | APPLICANT | LOAN AMOUNT |
|---|---|---|
| June 16, 2020 | Hutch Enterprises | funded June 23, 2020 in the amount of $149,900 |
| June 19, 2020 | The Hutchins Agency | not funded |
| June 20, 2020 | Rapids Theater Niagara Falls USA | not funded |
| July 27, 2020 | Rapids Theater Niagara Falls USA | funded September 1, 2020 in the amount of $149,900 |
|  | **TOTAL:** | **$749,500** |

22.  In support of each of the above-listed EIDL applications, the defendants provided materially false revenue and expense figures for the businesses on the loan applications.

23.  In support of each of the above-listed EIDL applications, the defendants also falsely and materially listed SOLIMAN as the owner of Rapids Theater, Bear Creek, 1711 Main, Hutch Enterprises, and The Hutchins Agency because the SBA required the owner of a business applying for SBA funds to have a strong credit score.

24.  Five of the eight EIDL applications were approved based on materially false and fraudulent pretenses, representations, and promises. As a result, loans under the EIDL program totaling approximately $749,500 were funded by the SBA.

25.  In furtherance of both the conspiracy and scheme, the defendants directed that EIDL proceeds be deposited into bank accounts that the defendants controlled.

26.     In furtherance of both the conspiracy and scheme, the defendants fraudulently used EIDL proceeds for their own personal benefit, including for expenses prohibited under the requirements of the EIDL program, such as, among other things, (i) payments for residential properties in North Tonawanda, New York, and Lewiston, New York; (ii) the purchase of a 2020 BMW; (iii) the purchase of a 2020 Cadillac; (iv) payments for overdue homeowner association fees relating to a Florida condominium, and; (v) payments to relatives.

27.     In furtherance of the conspiracy and the scheme, the defendants submitted, and caused to be submitted, a false and fraudulent PPP loan application in the name of CWE Entertainment d/b/a Rapids Theater to Bank on Buffalo.

28.     On or about April 2, 2020, SOLIMAN e-mailed a PPP loan application to Bank on Buffalo seeking a PPP loan in the amount of $74,838 for CWE Entertainment d/b/a Rapids Theater.  The application falsely stated that CWE Entertainment had 60 employees.

29.     On or about April 23, 2020, in support of the PPP loan application, SOLIMAN sent multiple e-mails to Bank on Buffalo containing payroll records that SOLIMAN represented were payroll records of CWE Entertainment.  SOLIMAN copied HUTCHINS on these e-mails.

30.     In furtherance of the conspiracy and the scheme, SOLIMAN sent payroll records to Bank on Buffalo which were not the payroll records for CWE Entertainment.

31.     On or about April 23, 2020, in further support of the CWE Entertainment PPP loan application, SOLIMAN e-mailed Bank on Buffalo a document that purported to be CWE Entertainment board meeting minutes from June 30, 2019. The purported board meeting minutes were fraudulent.

32.     In furtherance of both the conspiracy and scheme, the defendants directed that PPP loan proceeds from Bank on Buffalo be deposited into bank accounts that the defendants controlled.

33.     In furtherance of both the conspiracy and scheme, the defendants fraudulently used the PPP loan proceeds for their own personal benefit, including for expenses prohibited under the requirements of the PPP logan program.

34.     In furtherance of both the conspiracy and scheme, the defendants used the wires to send the following e-mails, among others, regarding the fraudulent scheme to obtain the loans under the EIDL and PPP programs:

   a.   On April 4, 2020, HUTCHINS forwarded an e-mail entitled "Making the most of your GoFundMe, product updates and details on the federal CARES Act" to SOLIMAN and two other individuals, including an employee of Rapids Theater. In the email, HUTCHINS stated, "Please look into this and see if there are any options for us for go fund me or loans that we can apply for our businesses. Thanks Roberto was up all night filling out forms for payroll relief as well as economic relief John."

   b.   On April 7, 2020, HUTCHINS emailed Individual 1, a person known to the grand jury who was employed by Bank on Buffalo, to complain about Individual 1's suggestion that SOLIMAN pursue an PPP loan through another bank. HUTCHINS copied SOLIMAN on the email and wrote the following:

[Individual 1],

We wish to pursue the loans through Bank on Buffalo as the only loan we have with another institution at this time is through a Credit Union that is not doing these loans. … I was under the impression that our CFO had instituted the PPP loan as well as as [*sic*] the Economic Injury Disaster Loan (EIDL) through Bank on Buffalo only to see the email below suggesting we try other banks due to not having a loan relationship with you.

… Please commence the loan applications at your very earliest convenience. Let me know if there is any other info you need to move the applications forward for both loans. … Please expedite our loan applications and feel free to contact me personally for any other info necessary to move things along. Thank you.

John Hutchins

c. On April 22, 2020, HUTCHINS forwarded an e-mail to SOLIMAN with a link to an online PPP loan application and stated, "Roberto, We should also immediately apply for the EDIL [*sic*] loans."

d. On May 6, 2020, HUTCHINS forwarded an e-mail from SBALOANS.BUSINESS entitled "Additional Loan Opportunities" and wrote: "Roberto please apply for all 3 businesses. John."

e. On August 5, 2020, SOLIMAN e-mailed HUTCHINS stating, "John, … I'm almost working over one year to protect your business for nothing also I applied for PPP under my name to take huge responsibility under my name to pay your bills."

**All in violation of Title 18, United States Code, Section 1349.**

## COUNTS 2 THROUGH 9

### (Wire Fraud)

### The Grand Jury Further Charges That:

35. The allegations in the Introduction and Count 1 are incorporated by reference herein.

36. On or about the dates set forth below, in the Western District of New York, and elsewhere, and for the purpose of executing the scheme and artifice to defraud described above, the defendants, JOHN L. HUTCHINS and ROBERTO SOLIMAN, knowingly caused to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, that is, the following EIDL loan applications, set forth in the chart below:

| COUNT | DATE | WIRE COMMUNICATION | LOAN AMOUNT FUNDED |
|---|---|---|---|
| 2 | March 30, 2020 | Online submission of EIDL application for CWE Entertainment d/b/a Rapids Theater | funded May 19, 2020 in amount of $149,900 |
| 3 | May 13, 2020 | Online submission of EIDL application for Bear Creek Entertainment | funded June 18, 2020 in amount of $149,900 |
| 4 | May 30, 2020 | Online submission of EIDL application for Bear Creek LLC | not funded |
| 5 | June 16, 2020 | Online submission of EIDL application for 1711 Main LLC | funded June 23, 2020 in amount of $149,900 |
| 6 | June 16, 2020 | Online submission of EIDL application for Hutch Enterprises | funded June 23, 2020 in amount of $149,900 |
| 7 | June 19, 2020 | Online submission of EIDL application for The Hutchins Agency | not funded |
| 8 | June 20, 2020 | Online submission of EIDL application for Rapids Theater Niagara Falls USA | not funded |

11

| COUNT | DATE | WIRE COMMUNICATION | LOAN AMOUNT FUNDED |
|---|---|---|---|
| 9 | July 27, 2020 | Online submission of EIDL application for Rapids Theater Niagara Falls USA | funded September 1, 2020 in amount of $149,900 |
| | | **TOTAL:** | **$749,500** |

**All in violation of Title 18, United States Code, Sections 1343 and 2.**

## COUNT 10

### (Bank Fraud)

**The Grand Jury Further Charges That:**

37. The allegations in the Introduction and in Count 1 are incorporated by reference herein.

38. Between on or about April 2, 2020, and on or about April 23, 2020, in the Western District of New York, and elsewhere, the defendants, JOHN L. HUTCHINS and ROBERTO SOLIMAN, did knowingly execute, and attempt to execute, a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of a financial institution, namely Bank on Buffalo, by means of materially false and fraudulent pretenses, representations, and promises.

**All in violation of Title 18, United States Code, Sections 1344(2) and 2.**

## COUNT 11

### (False Statement)

### The Grand Jury Further Charges That:

39. The allegations of the Introduction and Counts 1 through 10 are incorporated herein by reference.

40. On or about November 2, 2020, in the Western District of New York, the defendant, JOHN L. HUTCHINS, in a matter within the jurisdiction of the executive branch of the Government of the United States, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation to a Special Agent of the Federal Bureau of Investigation and to an Investigator of the United States Attorney's Office, that is, the defendant falsely denied applying for, or authorizing anyone to apply for, any EIDL or PPP loans, with the possible exception of one PPP loan for Rapids Theater.  These statements and representations by the defendant were materially false, fictitious, and fraudulent because, as the defendant then and there well knew, he had authorized and directed ROBERTO SOLIMAN to apply for loans under the EIDL program and PPP loans.

**All in violation of Title 18, United States Code, Section 1001(a)(2).**

## COUNTS 12 THROUGH 19

### (Engaging in Monetary Transactions with Criminally Derived Property)

### The Grand Jury Further Charges That:

41. The allegations of the Introduction and Counts 1 through 10 are incorporated herein by reference.

42. On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, ROBERTO SOLIMAN did knowingly, intentionally, and unlawfully engage in, and attempt to engage in, monetary transactions, by, through, and to a financial institution engaged in, and the activities of which affected, interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, bank fraud, in violation of Title 18, United States Code, Section 1344, and conspiracy to commit wire fraud and bank fraud under Title 18, United States Code, Section 1349, and while engaging in, and attempting to engage in, such monetary transactions, knew that the funds and monetary instruments involved in the transactions constituted, and were derived from, proceeds obtained from a criminal offense, such transactions consisting of the following and occurring on or about the below-identified dates:

| COUNT | APPROXIMATE DATE | FINANCIAL TRANSACTION | APPROXIMATE AMOUNT |
|---|---|---|---|
| 12 | June 30, 2020 | Outgoing International Wire Transfer from SOLIMAN's Bank on Buffalo account ending 7396 to National Bank of Egypt | $15,000.00 |
| 13 | July 20, 2020 | Outgoing International Wire Transfer from SOLIMAN's Bank on Buffalo account ending 7396 to National Bank of Egypt | $25,000.00 |
| 14 | August 21, 2020 | Withdrawal from SOLIMAN's Bank on Buffalo account ending 7396 for the down payment on a 2020 BMW X7. | $20,000.00 |

| COUNT | APPROXIMATE DATE | FINANCIAL TRANSACTION | APPROXIMATE AMOUNT |
|---|---|---|---|
| 15 | September 15, 2020 | Withdrawal from SOLIMAN's Bank on Buffalo account ending 7396 to purchase Bank on Buffalo Cashier's Check #9376 payable to SOLIMAN and deposited to SOLIMAN's Key Bank Account ending 7315 | $40,000.00 |
| 16 | September 15, 2020 | Withdrawal from SOLIMAN's Bank on Buffalo account ending 7396 to purchase Bank on Buffalo Cashier's Check #9377 payable to SOLIMAN and deposited to SOLIMAN's Bank of America account ending 9729 | $35,000.00 |
| 17 | October 5, 2020 | Withdrawal from SOLIMAN's KeyBank account ending 7315 to purchase KeyBank Official Check for payment towards SOLIMAN's purchase of residential real property | $20,000.00 |
| 18 | October 23, 2020 | Withdrawal by SOLIMAN from CWE's Bank on Buffalo account ending 6278 for payment towards HUTCHINS' Florida condo | $12,024.40 |
| 19 | December 21, 2020 | Withdrawal from SOLIMAN's Bank of America account ending 9729 to purchase Bank of America Cashier's Check for down payment towards SOLIMAN's purchase of residential real property | $30,509.50 |

**All in violation of Title 18, United States Code, Sections 1957 and 2.**

# FIRST FORFEITURE ALLEGATION

## (Proceeds Forfeiture)

### The Grand Jury Alleges That:

Upon conviction of one or more of the offenses set forth in Counts 1 through 10 of this Indictment, the defendants, JOHN L. HUTCHINS and ROBERTO SOLIMAN, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation. The property to be forfeited includes, but is not limited to, the following:

### A.   MONETARY SUM

The approximate sum of seven hundred forty-nine thousand five hundred dollars ($749,500) United States currency, which sum of money is equal to the total amount of proceeds obtained as a result of the offenses for which the defendants, JOHN L. HUTCHINS and ROBERTO SOLIMAN, are charged in Counts 1 through 10. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendants.

### B.   BANK ACCOUNTS

i. $402,302.04 United States currency seized from Bank on Buffalo Small Business Checking Account Ending in 6278 held in the Name of CWE Entertainment Corp.; and

ii. $1,796.35 United States currency seized from Bank on Buffalo WOW Personal Checking Account Ending in 7396 held in the Name of Roberto M. Soliman.

If any of the property described above, as a result of any act or omission of the defendant:

    i.    cannot be located upon the exercise of due diligence;

    ii.    has been transferred or sold to, or deposited with, a third person;

    iii.    has been placed beyond the jurisdiction of the Court;

    iv.    has been substantially diminished in value; or

    v.    has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 982(a)(2), Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).**

## SECOND FORFEITURE ALLEGATION

**(Money Laundering Forfeiture)**

**The Grand Jury Further Alleges That:**

Upon conviction of one or more of the offenses set forth in Counts 12 through 19 of this Indictment, the defendant ROBERTO SOLIMAN, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), the following property:

### A. PROPERTY

All right, title and interest in any and all property involved in violations of Title 18, United States Code, Section 1957 for which the defendant is convicted, and all property traceable to such property, including the following: 1) any property or any property traceable to such property, that was the subject of each transaction, transmission or transfer in violation of Section 1957; and 2) any property or any property traceable to such property, used in any manner or part to commit or to facilitate the commission of those violations.

### B. MONETARY AMOUNT

The sum of one hundred ninety-seven thousand five hundred thirty-three dollars and ninety cents ($197,533.90) United States currency, which sum of money is equal to the total amount of money involved in the money laundering offenses for which the defendant ROBERTO SOLIMAN is charged. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendants.

### C. SPECIFIC ASSETS

The following specific assets which have been identified as property involved in a money laundering transaction or transactions:

#### BANK ACCOUNTS

i. $402,302.04 United States currency seized from Bank on Buffalo Small Business Checking Account Ending in 6278 Held in the Name of CWE Entertainment Corp.; and

ii. $1,796.35 United States currency seized from Bank on Buffalo WOW Personal Checking Account Ending in 7396 Held in the Name of Roberto M. Soliman.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    i.    cannot be located upon the exercise of due diligence;

    ii.    has been transferred or sold to, or deposited with, a third person;

    iii.    has been placed beyond the jurisdiction of the Court;

    iv.    has been substantially diminished in value; or

    v.    has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 982(a)(1), and Title 21, United States Code, Section 853(p).**

DATED:     Buffalo, New York, March 24, 2022.

                                              TRINI E. ROSS
                                              United States Attorney

BY:    _s/Paul. E. Bonanno_____
           PAUL E. BONANNO
           Assistant United States Attorney
           United States Attorney's Office
           Western District of New York
           138 Delaware Avenue
           Buffalo, New York 14202
           716-843-5873
           Paul.Bonanno@usdoj.gov

A TRUE BILL:

s/Foreperson_____
FOREPERSON